**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN HART** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 22-2425** |
| | : | |
| **STEPHEN PARKINSON** | : | |

# MEMORANDUM

**MURPHY, J.** **July 29, 2026**

Section 1983 allows individuals to seek a remedy for civil rights violations, but plaintiffs may not use their civil rights cases to undermine the integrity of a criminal conviction. John Hart was investigated, tried, and convicted for crimes related to his harassment and intimidation of his former romantic partner. He moved, unsuccessfully, to suppress some of the evidence against him, including his use of a third-party service to conceal and misrepresent his identity when making phone calls to his former partner. Now, Mr. Hart alleges that the detective who investigated him conducted a warrantless search when he contacted the third-party company and requested records (even though the detective ultimately obtained a search warrant before receiving any documents). Mr. Hart further complains that the detective, in addition to certain members of the Philadelphia District Attorney's Office, suppressed exculpatory evidence related to the third-party company's record storage; the veracity of the detective's testimony at trial; and incentives allegedly provided in exchange for the victim's testimony at trial. Because a finding for Mr. Hart on such claims would undermine his criminal conviction, we dismiss the complaint in its entirety without prejudice.

## I. Background

In December 2019, defendant Steven Parkinson, a detective for the Philadelphia police department, initiated a criminal investigation into allegations that plaintiff John Hart was

"attempting to have his former paramour, an undocumented immigrant who was in the country illegally and who had committed various crimes, deported from the United States." DI 30 at ¶ 5. As part of his investigation, detective Parkinson contacted Spoofcard, LLC, a company which allows users to "choose the number that you want to call. And once you choose that number, you have the option to choose whatever number you want to show as the caller ID." *Id.* at ¶¶ 6-7, ECF No. 19.[1] Mr. Hart received part of detective Parkinson's communications with Spoofcard in discovery. *Id.* at ¶ 7. In those communications, detective Parkinson "sought clarification about how Spoofcard's service works, and what the numbers on Spoofcard's records indicate[.]" *Id.* at ¶ 7, ECF No. 10-16. Based on his communications and records received from Spoofcard, Mr. Hart was arrested. *Id.* at ¶ 6.

Mr. Hart proceeded to trial. *Id.* at ¶ 8. At trial, James Marcano — the "Technical Support Lead and Billing Representative" at Spoofcard — testified as a witness for the Commonwealth. *Id.* Owing in part to Mr. Marcano's testimony (according to Mr. Hart), Mr. Hart was convicted and sentenced to sixteen to thirty-two years in prison. *Id.*at ¶ 9. Following the denial of Mr. Hart's post-sentence motions and appeal of his conviction to the Pennsylvania Superior Court, however, Mr. Hart received discovery as part of a civil case. *Id.* at ¶ 10. The civil case discovery included communications which were unproduced in Mr. Hart's criminal case. *Id.* The communications were comprised of: (1) correspondence between Assistant

---

[1] Mr. Hart attaches several exhibits to his complaint comprising communications between detective Parkinson and Spoofcard, and the transcript of trial testimony by a Spoofcard representative during his criminal trial. DI 1 at ECF Nos. 10-79. We glean facts from those documents where appropriate. *Schmidt v. Skolas* , 770 F.3d 241, 249 (3d Cir. 2014) (courts may consider documents "integral to or explicitly relied upon in the complaint[.]") (citation modified).

District Attorneys and Spoofcard arranging for Mr. Marcano's testimony at Mr. Hart's criminal trial; and (2) correspondence between detective Parkinson and Spoofcard, in which detective Parkinson sought to understand Spoofcard's service and gather information relevant to his investigation. *Id.* at ECF Nos. 56-74. During their correspondence, a Spoofcard representative advised detective Parkinson to send a search warrant before Spoofcard could provide the information sought. *Id.* at ECF No. 64-65. Detective Parkinson then obtained and served a search warrant on Spoofcard. *Id.* at ¶ 14.

Mr. Hart alleges several ways the later produced evidence altered the outcome of his trial: (1) the records purportedly demonstrate that "Spoofcard's records are not self-authenticating and are inaccurate" and that the trial testimony of Mr. Marcano and detective Parkinson were false; (2) detective Parkinson "executed a warrantless search of Spoofcard's records" by making inquiries relevant to his investigation; (3) the records evince that Mr. Hart's cancellation of his credit card after his arrest "was not 'consciousness of guilt'" as the Commonwealth argued" at his trial; and (4) the failure to produce these documents limited Mr. Hart's available defenses at trial. *Id.* at ¶¶ 11-17. In addition to these purportedly key documents, Mr. Hart also says that the District Attorney's Office failed to disclose that it assisted his former partner — the "complainant" — in obtaining a visa "so that she could have a pathway for permanent residence[.]" *Id.* at ¶¶ 27-28. Mr. Hart now brings a claim for violation of his Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 against detective Parkinson (Count I), and "Jane Doe 1 through 3" (Count II). *Id.* at ¶¶ 34-45.

## II. <u>**Standard of Review**</u>

"At this early stage of the litigation, we accept the facts alleged in [Mr. Hart's] *pro se*

complaint as true, draw all reasonable inferences in [his] favor, and ask only whether that complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation modified). As we construe *pro se* filings liberally, we "apply the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citation modified). But Mr. Hart must nonetheless "allege sufficient facts . . . to support a claim" and is not permitted to "flout procedural rules—[he] must abide by the same rules that apply to all other litigants." *Id.*

## III. Discussion

We do not assess whether Mr. Hart has plausibly alleged a claim under 42 U.S.C. § 1983 because Mr. Hart's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). There, the United States Supreme Court held that in order to bring a claim under § 1983, "a plaintiff must prove that [his] conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus" — commonly referred to as the "favorable termination" requirement. *Id.* Accordingly, *Heck* calls on district courts to "consider whether a judgment in favor of the plaintiff would *necessarily imply* the invalidity of his conviction or sentence; if it would, the complaint must be dismissed[.]" *Id.* at 487 (emphasis added). *Heck* also explains, however — and Mr. Hart argues — that if the action "will *not* demonstrate the invalidity of any outstanding criminal judgment . . . the action should be allowed to proceed." *Id.*; DI 33 at 4-6.

Mr. Hart's claims imply the invalidity of his conviction. At the core of Mr. Hart's complaint is the argument that his trial would have had a different outcome if the alleged constitutional violations did not take place. More specifically, Mr. Hart argues that (among other things) the evidence he received would have shown that his conviction was based on false testimony, negated consciousness of guilt, and proved that he "did not and could not have committed the crimes alleged." DI 30 at ¶¶ 12, 15, 16. This is the exact kind of re-litigation of a defendant's conviction that *Heck* seeks to avoid. *Heck*, 512 U.S. at 484 (explaining that the favorable termination requirement "avoids parallel litigation over the issues of probable cause and guilt" and avoids "contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.") (citation modified); *see also Ortiz v. New Jersey State Police*, 747 F. App'x 73, 77 (3d Cir. 2018) (holding that the plaintiff's "claims that the defendants fabricated and suppressed evidence are barred by *Heck* because success on those claims would necessarily imply the invalidity of her conviction."); *Miller v. Commonwealth of Pennsylvania*, 588 F. App'x. 96, 97 (3d Cir. 2014) (1983 claim alleging failure to preserve exculpatory evidence was barred by *Heck*). *Heck* applies to Mr. Hart's claims here.

## IV. Conclusion

We dismiss Mr. Hart's claims without prejudice to bring them if, at some point, Mr. Hart can show that he can meet *Heck's* favorable termination requirement.